## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **SECOND WAVE ACQUISITION, LLC**<br>350 Main Street, Suite E<br>Seal Beach, CA 90740 | )<br>)<br>) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | )   Case No. |
| | ) |
| **EXCEPTIONAL SOFTWARE**<br>**STRATEGIES, INC.**<br>1304 Concourse Drive, Ste. 250<br>Linthicum, MD 21090 | )<br>)<br>)<br>) |
| | ) |
| and | ) |
| | ) |
| **PAUL J. STASKO, JR.**<br>1013 Monaghan Ct.<br>Lutherville, MD 21093 | )<br>)<br>) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT

Plaintiff, Second Wave Acquisition, LLC ("Plaintiff" or "Second Wave"), by and through its undersigned counsel, hereby files the following Complaint (the "Complaint") against Exceptional Software Strategies, Inc. (the "Defendant ESS" or "Defendant Borrower") and Paul J. Stasko ("Defendant Stasko" or "Defendant Guarantor" and collectively with Defendant Borrower, the "Defendants"). In support of the Complaint, Plaintiff respectfully alleges as follows:

## NATURE OF THE ACTION

1.   This is an action for breach of contract arising out of (i) a series of Loan Documents (as defined below) and Guaranties (as defined below) entered into by and between Defendant ESS, as Borrower, Defendant Stasko, as Guarantor, and Second Wave, as Lender and assignee of the

Taveekan Entities'[1] right, title, benefit, privileges, and interest in and to the Loans, the Loan

Documents, and any and all collateral pledged as security for payment thereunder[2]; and (ii) certain

Service Agreements (as defined below) to provide financial, accounting, and consulting services

to Defendant ESS, and Defendant ESS' failure to pay amounts due and owing thereunder.

2.      Defendant ESS acted as Borrower on three (3) loans: (i) the $715,000 Loan (as

defined below), (ii) the $1,000,000 Loan (as defined below), and (iii) the Factoring Loan (as

defined below).

3.      Defendant Stasko acted as Guarantor on the $715,000 Loan, the $1,000,000 Loan

and the Factoring Loan.

4.      Defendant ESS, as Borrower, defaulted on its obligations owed under the Loan

Documents due to, *inter alia*, its (i) failure to pay timely certain monthly interest payments due to

Second Wave under the Loan Documents; (ii) failure to pay all amounts (principal and accrued

interest) due to Second Wave under the Loan Documents on maturity; and (iii) breach and

violations of Defendant ESS' affirmative covenant to timely deliver financial statements and other

---

[1] The "Taveekan Entities" are collectively defined herein as Taveekan Capital Finance Fund I, LP ("Taveekan I LP"), Taveekan Capital Finance Fund I GP, LLC ("Taveekan I GP"), Taveekan Capital Finance Fund II, LP ("Taveekan II LP"), Taveekan Capital Finance Fund II, GP ("Taveekan II GP"), Taveekan Finance, LLC ("Taveekan Finance"), Taveekan Management, LLC ("Taveekan Management"), and any of their wholly owned affiliates and subsidiaries.

[2] Second Wave purchased and acquired from certain Taveekan Entities, and certain Taveekan Entities sold, transferred, conveyed and assigned to Second Wave, all of the Taveekan Entities' right, title, benefit, privileges, and interest in and to the Loans, the Loan Documents, any and all collateral pledged as security for payment thereunder, the Service Agreements and the Accounts Receivable pursuant to: (A)(i) that certain Asset Purchase Agreement, dated October 17, 2018, by and between Taveekan I LP, as Seller, and Second Wave, as Purchaser, (ii) that certain Collateral Assignment of ESS Loan Documents, dated October 17, 2018, by and between Taveekan I LP, as Assignor, and Second Wave, as Assignee, (iii) that certain Assignment and Assumption Agreement, dated October 17, 2018, by and between Taveekan I LP, as Assignor, and Second Wave, as Assignee, and (iv) that certain Bill of Sale, effective October 17, 2018, by and between Taveekan I LP, as Seller, and Second Wave, as Purchaser; and (B)(i) that certain Asset Purchase Agreement, dated October 17, 2018, by and between Taveekan I GP, as Seller, and Second Wave, as Purchaser, (ii) that certain Assignment and Assumption Agreement, effective October 17, 2018, by and between Taveekan I GP, as Assignor, and Second Wave, as assignee, and (iii) that certain Bill of Sale, effective October 17, 2018, by and between Taveekan I GP, as Seller, and Second Wave, as Purchaser; and (C) related documents (together with all other documents, instruments, and written agreements executed by any of the Taveekan Entities in connection with the Loans, the Loan Documents, and the Service Agreements (the "Assignment Documents").

related information requested by Second Wave in accordance with its rights under the Loan Documents.

5.      As a result of Defendant ESS' defaults as Borrower under the Loan Documents, Defendant Stasko, as Guarantor, defaulted under his respective obligations under the Loan Documents pursuant to his Guaranties on the $715,000 Loan, the $1,000,000 Loan and the Factoring Loan.

6.      Accordingly, Second Wave is now entitled to exercise and enforce its contractual rights and remedies against Defendant ESS, as Borrower, and Defendant Stasko, as Guarantor, under the $715,000 Promissory Note, the $1,000,000 Promissory Note, the Factoring Agreement, the Guaranties, and the other Loan Documents, as well as under all applicable laws.  The total amount due and owing to Second Wave from Defendant ESS, as Borrower, and Defendant Stasko, as Guarantor, under the Loan Documents as of September 11, 2019, is $5,808,983.62 (plus all attorneys' fees and expenses incurred by Second Wave, continuing interest, cost and loan expenses, and expenses of collection, and such other relief as this Court may deem just and equitable).

7.      Defendant ESS also defaulted on its obligations under the Service Agreements due to, *inter alia*, its failure to pay timely all compensation, fees, expenses, and other amounts due under the Service Agreements to Second Wave.

8.      As a result of the defaults, Second Wave is now entitled to exercise and enforce its contractual rights and remedies against Defendant ESS in accordance with the Service Agreements, as well as all applicable laws.  The total amount due and owing to Second Wave from Defendant ESS, as of September 11, 2019, under the Service Agreements is $508,362.00.

## PARTIES

9.      Plaintiff, Second Wave Acquisition, LLC is a limited liability company, the sole member of which is Second Wave Capital Management, LLC.  Based on the citizenship of its sole member, for diversity purposes, Second Wave Acquisition, LLC is a citizen of Arizona, California, Colorado, Connecticut, Delaware, Florida, Illinois, Massachusetts, Nevada, New York, Oregon, Pennsylvania, Utah, Virginia, Wyoming, and a foreign nation.   Second Wave Capital Management, LLC is a limited liability company and, for diversity purposes, a citizen of Delaware and California Arizona, California, Colorado, Connecticut, Delaware, Florida, Illinois, Massachusetts, Nevada, New York, Oregon, Pennsylvania, Utah, Virginia, Wyoming, and a foreign nation, in that its members include:

a.      Partnerships, the partners of which are citizens of California, Illinois, and Massachusetts;

b.      Limited liability companies, the members of which are citizens of California, Nevada, Utah, and Wyoming;

c.      Corporations organized under the laws of Delaware with their principal places of business located in Pennsylvania;

d.      Trusts, the trustees of which are citizens of Connecticut and Florida; and

e.      Individual citizens of Arizona, California, Colorado, Connecticut, Massachusetts, New York, Oregon, Virginia, and foreign nations.

10.     Defendant, Exceptional Software Strategies, Inc. is a corporation formed in the state of Maryland.  Upon information and belief, ESS has a principal place of business located at 1304 Concourse Drive, Ste. 250, Linthicum, MD 21090, and a resident agent, Paul J. Stasko, Jr.,

located at 1304 Concourse Drive, Ste. 250, Linthicum, MD 21090. Therefore, Exceptional Software Strategies, Inc. is a citizen of Maryland.

11.    Defendant, Paul J. Stasko, in an individual and citizen of Maryland. Upon information and belief, Defendant, Paul J. Stasko resides at 1013 Monaghan Ct., Lutherville, MD 21093.

## JURISDICTION AND VENUE

12.    Subject-matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 (relating to diversity of citizenship) because complete diversity of citizenship exists between Plaintiff and Defendants, and the amount in controversy exceeds $75,000.

13.    Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial portion of the acts or omissions giving rise to the claims occurred in Anne Arundel County, which is within this District.

## FACTUAL BACKGROUND

**A.    $715,000 Promissory Note, dated May 11, 2017, and Paul Stasko's Guaranty and Pledge Agreement for the Benefit of Second Wave**

14.    Defendant ESS, as Borrower, made, executed, and delivered to Taveekan II LP that certain Secured Promissory Note, dated May 11, 2017 (the "$715,000 Promissory Note"), in the original principal amount of $715,000.00 (the "$715,000 Loan"). A true and correct copy of the $715,000 Promissory Note is attached hereto as attached hereto as **Exhibit "A"** and incorporated by reference herein.

15.    In order to secure Defendant ESS' obligations under the $715,000 Promissory Note, on May 11, 2017, Defendant ESS made, executed and delivered to Taveekan II LP that certain Security Agreement (the "$715,000 Loan Security Agreement"), thereunder granting Taveekan II LP a continuing security interest in and lien upon certain Collateral (as defined

therein).  A true and correct copy of the $715,000 Loan Security Agreement is attached hereto as **Exhibit "B"** and incorporated by reference herein.

16.     In order to further secure Defendant ESS' obligations under the $715,000 Promissory Note, on May 11, 2017, Defendant ESS made, executed and delivered to Taveekan II LP that certain Warrant to Purchase Common Stock (the "$715,000 Loan Warrant Agreement"), therein granting Taveekan II LP the right to subscribe for and purchase from Defendant ESS its Common Stock (as defined therein) at the Exercise Price.  A true and correct copy of the $715,000 Loan Warrant Agreement is attached hereto as **Exhibit "C"** and incorporated by reference herein.

17.     In order to further secure Defendant ESS' obligations under the $715,000 Promissory Note, on May 10, 2017, Defendant Stasko, as Guarantor, made, executed and delivered to Taveekan II LP that certain Guaranty and Pledge Agreement (the "$715,000 Loan Guaranty"), therein (i) guarantying payment and satisfaction of all obligations of Defendant ESS, as Borrower, under the $715,000 Promissory Note and other $715,000 Promissory Note Loan Documents (as defined below), and (ii) pledging, assigning and granting to Taveekan II LP a first priority interest in and to one-hundred percent (100%) of his equity interest in Defendant ESS.  A true and correct copy of the $715,000 Loan Guaranty is attached hereto as **Exhibit "D"** and incorporated by reference herein.

18.     The $715,000 Promissory Note, the $715,000 Loan Security Agreement, the $715,000 Loan Warrant Agreement, the $715,000 Loan Guaranty, and all other documents, instruments, and written agreements executed in connection with the $715,000 Loan and the $715,000 Promissory Note are collectively referred to hereinafter as the "$715,000 Promissory Note Loan Documents".

19.     The $715,000 Promissory Note provides that interest shall accrue at a fluctuating rate, which rate shall change monthly to equal the higher of (i) fifteen percent (15%) per annum and (ii) a rate per annum of one thousand two hundred and fifty (1,250) basis points above LIBOR, as in effect from time to time.  See **Exhibit "A"**, $715,000 Promissory Note at 1: Sect. 1(a).

20.     Pursuant to the $715,000 Promissory Note, Defendant ESS, as Borrower, agreed to pay timely all amounts due to Second Wave under the $715,000 Promissory Note Loan Documents.

21.     Pursuant to the terms of the $715,000 Loan Guaranty, Defendant Stasko, as Guarantor, is liable for any event of default on the $715,000 Loan by Defendant ESS, as Borrower.

**B.      $1,000,000 Promissory Note, dated November 15, 2017, and Paul Stasko's Guaranty and Pledge Agreement for the Benefit of Second Wave**

22.     Defendant ESS, as Borrower, made, executed, and delivered to Taveekan I LP that certain Secured Promissory Note, dated November 15, 2017 (the "$1,000,000 Promissory Note"), in the original principal amount of $1,000,000.00 (the "$1,000,000 Loan").  A true and correct copy of the $1,000,000 Promissory Note is attached hereto as attached hereto as **Exhibit "E"** and incorporated by reference herein.

23.     In order to secure Defendant ESS' obligations under the $1,000,000 Promissory Note, on November 16, 2017, Defendant ESS made, executed and delivered to Taveekan I LP that certain Warrant to Purchase Series A Preferred Stock (the "$1,000,000 Loan Warrant Agreement"), therein granting Taveekan I LP the right to subscribe for and purchase from Defendant ESS its Preferred Stock (as defined therein) at the Exercise Price.  A true and correct copy of the $1,000,000 Warrant Agreement is attached hereto as **Exhibit "F"** and incorporated by reference herein.

24.     In order to further secure Defendant ESS' obligations under the $1,000,000 Promissory Note, on November 16, 2017, Defendant Stasko, as Guarantor, made, executed and delivered to Taveekan I LP that certain Guaranty and Pledge Agreement (the "$1,000,000 Loan Guaranty"), therein (i) guarantying payment and satisfaction of all obligations of Defendant ESS, as Borrower, under the $1,000,000 Promissory Note and other $1,000,000 Promissory Note Loan Documents (as defined below), (ii) pledging, assigning and granting to Taveekan I LP a continuing first priority interest in and lien upon one-hundred percent (100%) of his equity interest in Defendant ESS, and (iii) pledging, assigning and granting to Taveekan I LP a continuing first priority interest in and lien upon all personal property of Defendant Stasko.  A true and correct copy of the $1,000,000 Loan Guaranty is attached hereto as **Exhibit "G"** and incorporated by reference herein.

25.     The $1,000,000 Promissory Note, the $1,000,000 Warrant Loan Agreement, the $1,000,000 Loan Guaranty, and all other documents, instruments, and written agreements executed in connection with the $1,000,000 Loan and the $1,000,000 Promissory Note are collectively referred to hereinafter as the "$1,000,000 Promissory Note Loan Documents".

26.     The $1,000,000 Promissory Note provides that interest shall accrue at a fluctuating rate, which rate shall change monthly to equal the higher of (i) 1.75% per month and (ii) a rate per annum of one thousand two hundred and fifty (1,250) basis points above LIBOR, as in effect from time to time.  See **Exhibit "E"**, $1,000,000 Promissory Note at 1: Sect. 1(a).

27.     Pursuant to the $1,000,000 Promissory Note, Defendant ESS, as Borrower, agreed to pay timely all amounts due to Second Wave under the $1,000,000 Promissory Note Loan Documents.

28.     Pursuant to the terms of the $1,000,000 Loan Guaranty, Defendant Stasko, as Guarantor, is liable for any event of default on the $1,000,000 Loan by Defendant ESS, as Borrower.

**C.     Factoring Loan and Security Agreement, dated May 20, 2017, and Paul Stasko's Guaranty for the Benefit of Second Wave**

29.     Defendant ESS, as Seller, and Taveekan I LP, as Purchaser, entered into that certain Factoring Loan and Security Agreement (the "Factoring Agreement") under which Taveekan I LP advanced funds to the Defendant ESS for the purchase of certain Accounts from Defendant ESS (the "Factoring Loan").  A true and correct copy of the Factoring Agreement is attached hereto as attached hereto as **Exhibit "H"** and incorporated by reference herein.

30.     In order to secure Defendant ESS' obligations under the Factoring Agreement, on May 20, 2017, Defendant Stasko, as Guarantor, made, executed and delivered to Taveekan I LP that certain Guaranty (the "Factoring Loan Guaranty" and collectively with the $715,000 Loan Guaranty and the $1,000,000 Loan Guaranty, the "Guaranties"), therein guarantying the full performance by Defendant ESS of each of its duties and satisfaction of all obligations of Defendant ESS under the Factoring Agreement.  A true and correct copy of the Factoring Loan Guaranty is attached hereto as **Exhibit "I"**, and incorporated by reference herein.

31.     The Factoring Agreement, the Factoring Loan Guaranty, and all other documents, instruments, and written agreements executed in connection with the Factoring Loan and the Factoring Loan are collectively referred to hereinafter as the "Factoring Agreement Loan Documents".[3]

---

[3]  The $715,000 Promissory Note Loan Documents, the $1,000,000 Promissory Note Loan Documents, and the Factoring Agreement Loan Documents are collectively defined herein as the "Loan Documents".

32.     The Factoring Agreement and the Factoring Loan Guaranty both provide that the Defendants shall be liable, and shall reimburse Second Wave on demand for all costs and expenses, including attorneys' fees, incurred by Second Wave in connection with the administration of the Factoring Agreement, the enforcement of Second Wave's rights and remedies under the Factoring Agreement Loan Documents, or in any way arising out of or in connection with the Factoring Agreement Loan Documents.

33.     Pursuant to the Factoring Agreement, Defendant ESS agreed to pay timely all amounts due to Second Wave under the Factoring Agreement Loan Documents.

34.     Pursuant to the terms of the Factoring Loan Guaranty, Defendant Stasko, as Guarantor, is liable for any event of default on the Factoring Loan by Defendant ESS.

D.     **The ESS Finance Service Agreement and Consulting Agreements**

35.     Defendant ESS and Taveekan Finance entered into that certain Taveekan Finance Services Agreement, effective November 8, 2017 (as further amended, modified, or supplemented through the date hereof, the "Finance Services Agreement"), under which Defendant ESS engaged Taveekan Finance to perform certain financial and accounting services to Defendant ESS.  A true and correct copy of the Finance Services Agreement is attached hereto as **Exhibit "J"**.

36.     Under the Finance Services Agreement, Defendant ESS is required to pay timely the fees, expenses, and other amounts when due under the Finance Services Agreement for the services rendered thereunder.  See **Exhibit "J"**, Finance Services Agreement at 1.

37.     Defendant ESS and Taveekan Management entered into that certain Consulting Agreement, dated May 11, 2017, as amended by that certain Amended and Restated Consulting Agreement, dated November 15, 2017 (as further amended, modified, or supplemented through the date hereof, the "ESS/Taveekan Consulting Agreement"), under which Defendant ESS

engaged Taveekan Management as its consultant to perform certain consulting and advisory services to Defendant ESS.  A true and correct copy of the ESS/Taveekan Consulting Agreement is attached hereto as **Exhibit "K"**.

38.     Under the ESS/Taveekan Consulting Agreement, Defendant ESS is required to pay timely the compensation, fees, expenses, and other amounts due under the ESS/Taveekan Consulting Agreement for the services rendered thereunder.  See **Exhibit "K"**, Amended and Restated Consulting Agreement at 1.

39.     Defendant ESS and Rocket 22, LLC entered into that certain Consulting Agreement, dated May 11, 2017, as amended by that certain Amended and Restated Consulting Agreement, dated November 15, 2017 (as further amended, modified, or supplemented through the date hereof, the "ESS/Rocket Consulting Agreement" and collectively with the Finance Service Agreement and the ESS/Taveekan Consulting Agreement, the "Service Agreements"), under which Defendant ESS engaged Rocket 22, LLC as its consultant to perform certain consulting and advisory services to Defendant ESS.  A true and correct copy of the ESS/Rocket Consulting Agreement is attached hereto as **Exhibit "L"**.

40.     Under the ESS/Rocket Consulting Agreement, Defendant ESS is required to pay timely the compensation, fees, expenses, and other amounts due under the ESS/Rocket Consulting Agreement for the services rendered thereunder.  See **Exhibit "L"**, Amended and Restated Consulting Agreement at 1.

     **E.**     **Sale and Assignment of The Taveekan Entities' Right, Title and Interest in and to the Loans, the Loan Documents, all Collateral, the Service Agreements and Accounts Receivable**

41.     Second Wave purchased and acquired from certain Taveekan Entities, and certain Taveekan Entities sold, transferred, conveyed and assigned to Second Wave,  all of the Taveekan

Entities' right, title, benefit, privileges, and interest in and to the Loans, the Loan Documents, any and all collateral pledged as security for payment thereunder, the Service Agreements and the Accounts Receivable due and owing under the Service Agreements, to Second Wave, pursuant to (A)(i) that certain Asset Purchase Agreement, dated October 17, 2018, by and between Taveekan I LP, as Seller, and Second Wave, as Purchaser, (ii) that certain Collateral Assignment of ESS Loan Documents, dated October 17, 2018, by and between Taveekan I LP, as Assignor, and Second Wave, as Assignee, (iii) that certain Assignment and Assumption Agreement, dated October 17, 2018, by and between Taveekan I LP, as Assignor, and Second Wave, as Assignee, and (iv) that certain Bill of Sale, effective October 17, 2018, by and between Taveekan I LP, as Seller, and Second Wave, as Purchaser; and (B)(i) that certain Asset Purchase Agreement, dated October 17, 2018, by and between Taveekan I GP, as Seller, and Second Wave, as Purchaser, (ii) that certain Assignment and Assumption Agreement, effective October 17, 2018, by and between Taveekan I GP, as Assignor, and Second Wave, as assignee, and (iii) that certain Bill of Sale, effective October 17, 2018, by and between Taveekan I GP, as Seller, and Second Wave, as Purchaser; and (C) related documents (together with all other documents, instruments, and written agreements executed by the Taveekan Entities in connection with the Loans, the Loan Documents, and the Service Agreements, the "Assignment Documents").  True and correct copies of the Assignment Documents are attached hereto as **Exhibit "M"** and incorporated by reference herein.

42.     Second Wave is the present holder of the $715,000 Promissory Note, the $715,000 Loan Guaranty, the $1,000,000 Promissory Note, the $1,000,000 Loan Guaranty, the Factoring Agreement, the Factoring Loan Guaranty, all other Loan Documents, and the Service Agreements, and Second Wave holds all right, title, benefit, privileges and interest in and to the $715,000 Promissory Note, the $715,000 Loan Guaranty, the $1,000,000 Promissory Note, $1,000,000 Loan

Guaranty, the Factoring Agreement, the Factoring Loan Guaranty, all other Loan Documents, and the Service Agreements, and has not assigned the same.

**F.    Defendant ESS, as Borrower, and Defendant Stasko, as Guarantor, Default Under The Loan Documents, and Defendant ESS Default Under The Service Agreements**

43.    The $715,000 Promissory Note and the $715,000 Loan Guaranty provide that a default under the $715,000 Promissory Note and the $715,000 Loan Guaranty shall occur, *inter alia*, if: (i) Defendant ESS, as Borrower, or Defendant Stasko, as Guarantor, fails to make any payments of principal, interest or other amounts when due under the $715,000 Promissory Note or the $715,000 Loan Guaranty; (ii) Defendant ESS breaches or violates any covenant or agreement in the $715,000 Promissory Note, which breach or violation is not cured within 10 days after receiving written notice of such default from Second Wave; (iii) any event of default occurs under the $715,000 Loan Security Agreement; or (iv) any event of default occurs under any other loan of Defendant ESS with a principal amount in excess of $50,000.00.  See **Exhibit "A"**, $715,000 Promissory Note at 5-6: Sect. 9.

44.    Pursuant to the terms of the $715,000 Promissory Note, the $715,000 Loan Guaranty, and the other $715,000 Promissory Note Loan Documents, upon the occurrence of a default as set forth in paragraph 43 above and the failure of Defendant ESS, as Borrower, and Defendant Stasko, as Guarantor, to cure the default during the expiration of any cure period, if any, in addition to all rights available to Second Wave under the $715,000 Promissory Note, the $715,000 Loan Guaranty, and the other $715,000 Promissory Note Loan Documents or under applicable law, Second Wave may: (1) accelerate all outstanding amounts owed under the $715,000 Promissory Note Loan Documents, and demand payment for the total accelerated amount owed under the $715,000 Promissory Note Loan Documents; (2) exercise all rights as

holder of Defendant Stasko's pledged equity interest in Defendant ESS, including, but not limited to, all voting and/or consensual rights and powers, and to receive all dividends; (3) commence any legal action against Defendants under the $715,000 Promissory Note, the $715,000 Loan Guaranty, and any other $715,000 Promissory Note Loan Documents; (4) collect, foreclose, realize and execute on any and all Collateral pledged under the $715,000 Promissory Note Loan Documents; (5) exercise all of its rights and remedies under any security agreement, pledge agreement, mortgage, power, or other document issued in connection with or arising out of or relating to the $715,000 Loan; and (6) exercise all rights and remedies afforded by the Uniform Commercial Code in effect in the State of Maryland or afforded by other applicable law.

45.     The $1,000,000 Promissory Note and the $1,000,000 Loan Guaranty provide that a default under the $1,000,000 Promissory Note and the $1,000,000 Loan Guaranty shall occur, *inter alia*, if: (i) Defendant ESS, as Borrower, or Defendant Stasko, as Guarantor, fails to make any payments of principal, interest or other amounts when due under the $1,000,000 Promissory Note or the $1,000,000 Loan Guaranty; (ii) Defendant ESS breaches or violates any covenant or agreement in the $1,000,000 Promissory Note, which breach or violation is not cured within 10 days after receiving written notice of such default from Second Wave; (iii) any event of default occurs under the $1,000,000 Loan Guaranty; or (iv) any event of default occurs under any other loan of Defendant ESS with a principal amount in excess of $50,000.00.  See **Exhibit "E"**, $1,000,000 Promissory Note at 6: Sect. 10.

46.     Pursuant to the terms of the $1,000,000 Promissory Note, the $1,000,000 Loan Guaranty, and the other $1,000,000 Promissory Note Loan Documents, upon the occurrence of a default as set forth in paragraph 45 above and the failure of the Defendant ESS, as Borrower, and Defendant Stasko, as Guarantor, to cure the default during the expiration of any cure period, if

any, in addition to all rights available to Second Wave under the $1,000,000 Promissory Note, the $1,000,000 Loan Guaranty, and the other $1,000,000 Promissory Note Loan Documents or under applicable law, Second Wave may: (1) accelerate all outstanding amounts owed under the $1,000,000 Promissory Note Loan Documents, and demand payment for the total accelerated amount owed under the $1,000,000 Promissory Note Loan Documents; (2) exercise all rights as holder of Defendant Stasko's pledged equity interest in Defendant ESS, including, but not limited to, all voting and/or consensual rights and powers, and to receive all dividends; (3) commence any legal action against Defendants under the $1,000,000 Promissory Note, the $1,000,000 Loan Guaranty, and any other $1,000,000 Promissory Note Loan Documents; (4) collect, foreclose, realize and execute on any and all Collateral pledged under the $1,000,000 Promissory Note Loan Documents; (5) exercise all of its rights and remedies under any security agreement, pledge agreement, mortgage, power, or other document issued in connection with or arising out of or relating to the $1,000,000 Loan; and (6) exercise all rights and remedies afforded by the Uniform Commercial Code in effect in the State of Maryland or afforded by other applicable law.

47.    The Factoring Agreement, the Factoring Loan Guaranty, and the other Factoring Agreement Loan Documents provide that a default under the Factoring Agreement and the Factoring Loan Guaranty shall occur, *inter alia*, if: (i) Defendant ESS or Defendant Stasko, as Guarantor, fails to make any payments of fees, expenses, Obligations (as defined therein), or other amounts when due under the Factoring Agreement; (ii) Defendant ESS breaches or violates any provision or covenant in the Factoring Agreement, including the covenant to provide Second Wave access to all premises where Collateral is located for the purposes of inspecting any of the Collateral, including Defendant ESS' books and records; (iii) Defendant Stasko, as Guarantor, fails to perform in accordance with his obligations under the Factoring Loan Guaranty; (iv) any event

of default occurs under the $715,000 Promissory Note Loan Documents, the $1,000,000 Promissory Note Loan Documents, or any other agreement of Defendant ESS with Second Wave. See **Exhibit "H"**, Factoring Agreement at 6-7.

48.     Pursuant to the terms of the Factoring Agreement, the Factoring Loan Guaranty, and the other Factoring Agreement Loan Documents, upon the occurrence of a default as set forth in paragraph 47 above and the failure of the Defendant ESS, as Borrower, and Defendant Stasko, as Guarantor, to cure the default during the expiration of any cure period, if any, in addition to all rights available to Second Wave under the Factoring Agreement, the Factoring Loan Guaranty, and the other Factoring Agreement Loan Documents or under applicable law, Second Wave may: (1) accelerate all outstanding amounts owed under the Factoring Agreement Loan Documents, and demand immediate payment for the total accelerated amount owed under the Factoring Agreement Loan Documents; (2) accrue Late Charges (as defined therein) on all outstanding Factoring Loan Indebtedness (as defined below), and demand immediate payment for the total amount of Late Charges owed under the Factoring Agreement Loan Documents; (3) demand immediate payment of an Early Termination Fee owed under the Factoring Agreement Loan Documents; (4) commence any legal action against the Defendants under the Factoring Agreement Loan Documents; and (5) exercise all of its rights and remedies under any security agreement, pledge agreement, mortgage, power, or other document issued in connection with or arising out of or relating to the Factoring Loan.

49.     Defendant ESS, as Borrower, defaulted under the terms of the $715,000 Promissory Note, by, *inter alia*, (1) Defendant ESS' failure to pay timely certain monthly interest payments due to Second Wave under the $715,000 Promissory Note Loan Documents; (2) Defendant ESS' failure to pay all amounts owed to Second Wave under the $715,000 Promissory Note Loan

Documents on maturity (May 12, 2019); (3) Defendant ESS' breach and violation of the affirmative covenant to timely deliver financial statements and other related information requested by Second Wave; (4) the occurrence of the $1,000,000 Loan Defaults (as defined below) under the $1,000,000 Promissory Note Loan Documents; and (5) the occurrence of the Factoring Loan Defaults (as defined below) under the Factoring Agreement Loan Documents (the "$715,000 Loan Borrower Defaults").  As a result of Defendant ESS' $715,000 Loan Borrower Defaults under the $715,000 Promissory Note, Defendant Stasko, as Guarantor, is in default of his obligations under the $715,0000 Promissory Note Loan Documents pursuant to the $715,000 Loan Guaranty (the "$715,000 Loan Guarantor Defaults" and collectively with the $715,000 Loan Borrower Defaults, the "$715,000 Loan Defaults").

50.     Defendant ESS, as Borrower, defaulted under the terms of the $1,000,000 Promissory Note, by, *inter alia*, (1) Defendant ESS' failure to pay timely certain monthly interest payments due to Second Wave under the $1,000,000 Promissory Note Loan Documents; (2) Defendant ESS' failure to pay all amounts owed to Second Wave under the $1,000,000 Promissory Note Loan Documents on maturity (November 16, 2018); (3) Defendant ESS' breach and violation of the affirmative covenant to timely deliver financial statements and other related information requested by Second Wave; (4) the occurrence of the $715,000 Loan Defaults under the $715,000 Promissory Note Loan Documents; and (5) the occurrence of the Factoring Loan Defaults under the Factoring Agreement Loan Documents (the "$1,000,000 Loan Borrower Defaults").  As a result of Defendant ESS' $1,000,000 Loan Borrower Defaults under the $1,000,000 Promissory Note, Defendant Stasko, as Guarantor, is in default of his obligations under the $1,000,0000 Promissory Note Loan Documents pursuant to the $1,000,000 Loan Guaranty (the "$1,000,000

Loan Guarantor Defaults" and collectively with the $1,000,000 Loan Borrower Defaults, the "$1,000,000 Loan Defaults").

51.     Defendant ESS defaulted under the terms of the Factoring Agreement Loan Documents by, *inter alia*, (1) Defendant ESS' failure to pay timely all Obligations due to Second Wave under the Factoring Agreement Loan Documents, including, but not limited to, (a) Factoring Fees, (b) Minimum Monthly Fees, (c) Collection Service Fees, (d) Out-of-pocket Expenses, and (e) Advanced Amounts; (2) Defendant ESS' failure to provide Second Wave access to all premises where Collateral is located for the purposes of inspecting any of the Collateral, including Defendant ESS' books and records; (3) Second Wave's good faith determination that it is insecure with respect to the prospect of repayment or performance of the Obligations under the Factoring Agreement Loan Documents; (4) the occurrence of the $715,000 Loan Defaults under the $715,000 Promissory Note Loan Documents; and (5) the occurrence of the $1,000,000 Loan Defaults under the $1,000,000 Promissory Note Loan Documents (the "Factoring Loan Borrower Defaults" and collectively with the $715,000 Loan Borrower Defaults and the $1,000,000 Loan Borrower Defaults, the "Factoring Loan Borrower Defaults").  As a result of ESS' Factoring Loan Borrower Defaults under the Factoring Agreement Loan Documents, Defendant Stasko, as Guarantor, is in default of his obligations under the Factoring Agreement Loan Documents pursuant to the Factoring Loan Guaranty (the "Factoring Loan Guarantor Defaults"[4] and collectively with the Factoring Loan Borrower Defaults, the "Factoring Loan Defaults").[5]

---

[4]  The $715,000 Loan Guarantor Defaults, the $1,000,000 Loan Guarantor Defaults and the Factoring Loan Guarantor Defaults shall be collectively referred to herein as the "Guarantor Defaults".

[5]  The $715,000 Loan Defaults, the $1,000,000 Loan Defaults and the Factoring Loan Defaults shall be collectively referred to hereinafter as the "Loan Defaults".

52.     Defendant ESS breached and defaulted in its performance under the terms of the Service Agreements by, *inter alia*, Defendant ESS' failure to pay timely all compensation, fees, expenses and other amounts due under the Service Agreements to Second Wave (the "Service Agreement Defaults" and collectively with the Loan Defaults, the "Defaults").

53.     On July 23, 2019, Second Wave provided Defendant ESS with a Notice of Default (the "ESS Notice of Default"), wherein Second Wave advised Defendant ESS that the $715,000 Loan Defaults, the $1,000,000 Loan Defaults, and the Factoring Loan Defaults constituted Events of Default under the Loan Documents, and that the Service Agreement Defaults constituted defaults under the Service Agreements.  Second Wave also advised Defendant ESS that as a result of the Defaults, (i) Second Wave accelerated all outstanding Loan Indebtedness owed under the Loan Documents and demanded payment of all outstanding Loan Indebtedness within ten (10) days from the date of the Notice of Default; (ii) Second Wave demanded payment of all outstanding Accounts Receivable owed under the Service Agreements within ten (10) days from the date of the ESS Notice of Default; and (iii) Second Wave intended to exercise any and all of its rights and remedies under the Loan Documents, Service Agreements, applicable law or in equity without further notice, if the entire outstanding Indebtedness owed under the Loan Documents and under the Service Agreements to Second Wave was not paid within the ten (10) day period from the date of the ESS Notice of Default.  A true and correct copy of the ESS Notice of Default is attached hereto as **Exhibit "N"**.

54.     On July 23, 2019, Second Wave provided Defendant Stasko with a Notice of Default (the "Stasko Notice of Default"), wherein Second Wave advised Defendant Stasko that the $715,000 Loan Defaults, the $1,000,000 Loan Defaults, and the Factoring Loan Defaults constituted Events of Default under the Loan Documents.  Second Wave also advised Defendant

Stasko that as a result of the Loan Defaults, (i) Second Wave accelerated all outstanding Indebtedness owed under the and demanded payment of all outstanding Loan Indebtedness owed under the Loan Documents within ten (10) days from the date of the Stasko Notice of Default; (ii) Second Wave intended to exercise any and all of its rights and remedies under the Loan Documents, applicable law or in equity without further notice, if the entire outstanding Loan Indebtedness owed under the Loan Documents to Second Wave was not paid within the ten (10) day period from the date of the Stasko Notice of Default.  A true and correct copy of the Stasko Notice of Default is attached hereto as **Exhibit "O"**.

55.     Defendant ESS has failed to pay all of the Indebtedness due by Defendant ESS to Second Wave under the Loan Documents and Service Agreements within the ten (10) day period from the date of the ESS Notice of Default.

56.     Defendant Stasko has failed to pay all of the Loan Indebtedness due by Defendant ESS and Defendant Stasko to Second Wave under the Loan Documents within the ten (10) day period from the date of the Stasko Notice of Default.

57.     On August 7, 2019, Second Wave provided Defendant ESS with a Notice of Demand for immediate payment of the entire outstanding Indebtedness owed by Defendant ESS to Second Wave under the Loan Documents and Service Agreements (the "ESS Notice of Demand").  In the ESS Notice of Demand, Second Wave advised Defendant ESS that all outstanding Indebtedness owed under the Loan Documents and Service Agreement is immediately due, and demanded payment of the entire outstanding Indebtedness owed under the Loan Documents and Service Agreements within ten (10) days of the date of the ESS Notice of Demand. Second Wave further advised Defendant ESS that it intended to exercise any and all of its rights and remedies under the Loan Documents, the Service Agreements, applicable law or in equity

without further notice, if Defendant ESS failed to pay the entire outstanding Indebtedness owed under the Loan Documents and Service Agreements to Second Wave within the ten (10) day period from the date of the ESS Notice of Demand.  A true and correct copy of the ESS Notice of Demand is attached hereto as **Exhibit "P"**, and incorporated by reference herein.

58.     On August 7, 2019, Second Wave provided Defendant Stasko with a Notice of Demand for immediate payment of the entire outstanding Loan Indebtedness owed by Defendant Stasko to Second Wave under the Loan Documents (the "Stasko Notice of Demand").  In the Stasko Notice of Demand, Second Wave advised Defendant Stasko that all outstanding Loan Indebtedness owed under the Loan Documents is immediately due, and demanded payment of the entire outstanding Loan Indebtedness owed under the Loan Documents within ten (10) days of the date of the Stasko Notice of Demand.  Second Wave further advised Defendant Stasko that it intended to exercise any and all of its rights and remedies under the Loan Documents, applicable law or in equity without further notice, if Defendant Stasko failed to pay the entire outstanding Loan Indebtedness owed under the Loan Documents to Second Wave within the ten (10) day period from the date of the Stasko Notice of Demand.  A true and correct copy of the Stasko Notice of Demand is attached hereto as **Exhibit "Q"**, and incorporated by reference herein.

59.     As of the date of this Complaint, Defendant ESS has not taken any steps to cure the Defaults.  As of the date of this Complaint, Defendant ESS, as Borrower, has failed to pay all of the Loan Indebtedness due by Defendant ESS, as Borrower, and Defendant Stasko, as Guarantor, to Second Wave under the $715,000 Promissory Note, the $715,000 Loan Guaranty, the $1,000,000 Promissory Note, the $1,000,000 Loan Guaranty, the Factoring Agreement, the Factoring Loan Guaranty, and all other Loan Documents.  Furthermore, as of the date of this

Complaint, Defendant ESS has failed to pay all of the Accounts Receivable due by Defendant ESS to Second Wave under the Service Agreements.

60.     As of the date of this Complaint, Defendant Stasko, as Guarantor, has not taken any steps to cure the Guarantor Defaults.  Furthermore, as of the date of this Complaint, Defendant ESS, as Borrower, and Defendant Stasko, as Guarantor, have failed to pay all of the Loan Indebtedness due by Defendant ESS, as Borrower, and Defendant Stasko, as Guarantor, to Second Wave under the $715,000 Promissory Note, the $715,000 Loan Guaranty, the $1,000,000 Promissory Note, the $1,000,000 Loan Guaranty, the Factoring Agreement, the Factoring Loan Guaranty, and all other Loan Documents.

61.     In accordance with the terms of the $715,000 Promissory Note, the $715,000 Loan Guaranty, the $1,000,000 Promissory Note, the $1,000,000 Loan Guaranty, the Factoring Agreement, the Factoring Loan Guaranty, and the other Loan Documents, Second Wave demanded Defendants' immediate payment of all amounts due to Second Wave under the Loan Documents.

62.     In accordance with the terms of the Service Agreements, Second Wave demanded immediate payment of all Accounts Receivable owed by Defendant ESS to Second Wave under the Service Agreements.

**G.     Indebtedness Owed Under The Loan Documents and Service Agreements**

63.     As of September 11, 2019, the total amount owed by Defendant ESS, as Borrower, and Defendant Stasko, as Guarantor, to Second Wave under the $715,000 Promissory Note, the $715,000 Loan Guaranty, the $1,000,000 Promissory Note, the $1,000,000 Loan Guaranty, the Factoring Agreement, the Factoring Loan Guaranty, and the other Loan Documents is $5,808,983.62, which consists of:

      a.     Indebtedness owed under the $715,000 Promissory Note Loan Documents: (i) principal balance due on the $715,000 Promissory Note and the $715,000

Loan Guaranty of $715,000.00; and (ii) accrued interest under the $715,000 Promissory Note and the $715,000 Loan Guaranty in the amount of $248,793.05 (collectively with the principal balance amount set forth in this subparagraph, together with continuing interest and costs, but not including attorneys' fees and loan expenses, the "$715,000 Promissory Note Indebtedness");

b.    Indebtedness owed under the $1,000,000 Promissory Note Loan Documents: (i) principal balance due on the $1,000,000 Promissory Note and the $1,000,000 Loan Guaranty of $1,000,000.00; and (ii) accrued interest under the $1,000,000 Promissory Note and the $1,000,000 Loan Guaranty in the amount of $439,536.55 (collectively with the principal balance amount set forth in this subparagraph, together with continuing interest and costs, but not including attorneys' fees and loan expenses, the "$1,000,000 Promissory Note Indebtedness"); and

c.    Indebtedness owed under the Factoring Agreement Loan Documents: (i) unpaid principal balance of advances due on the Factoring Agreement and the Factoring Loan Guaranty of $2,211,259.00; and (ii) accrued interest, fees and expenses under the Factoring Agreement and the Factoring Loan Guaranty in the amount of $1,194,395.02 (collectively with the principal balance of advances amount set forth in this subparagraph, together with continuing interest and costs, but not including attorneys' fees and loan expenses, the "Factoring Loan Indebtedness" and collectively referred to hereinafter with the $715,000 Promissory Note Indebtedness and the $1,000,000 Promissory Note Indebtedness as the "Loan Indebtedness").

64.    As of September 11, 2019, the total amount owed by Defendant ESS to Second Wave under the Service Agreements is $508,362.00 (the "Accounts Receivable" and collectively referred to hereinafter with the Loan Indebtedness as the "Indebtedness").

65.    Defendant ESS, as Borrower, has not satisfied its obligations for (i) the $715,000 Promissory Note Indebtedness due under the $715,000 Promissory Note and the $715,000 Promissory Note Loan Documents, (ii) the $1,000,000 Promissory Note Indebtedness due under the $1,000,000 Promissory Note and the $1,000,000 Promissory Note Loan Documents, and (iii) the Factoring Loan Indebtedness due under the Factoring Agreement and the Factoring Agreement Loan Documents.

66.     Defendant Stasko, as Guarantor, has not satisfied his obligations under (i) the $715,000 Loan Guaranty of the $715,000 Promissory Note and the $715,000 Promissory Note Loan Documents, (ii) the $1,000,000 Loan Guaranty of the $1,000,000 Promissory Note and the $1,000,000 Promissory Note Loan Documents, and (iii) the Factoring Loan Guaranty of the Factoring Agreement and the Factoring Agreement Loan Documents.

67.     Defendant ESS has not satisfied its obligations for payment of the Accounts Receivable Due under the Loan Documents.

### COUNT I – BREACH OF CONTRACT (Default on the $715,000 Loan) (Against Defendant ESS, as Borrower)

68.     Plaintiff hereby incorporates paragraphs 1-67 as if the same were fully set forth herein at length.

69.     This is a breach of contract claim against Defendant ESS on the $715,000 Loan for breach of its obligations, as Borrower, under the $715,000 Promissory Note and the $715,000 Promissory Note Loan Documents.

70.     Defendant ESS, as Borrower, defaulted under the terms of the $715,000 Promissory Note and the $715,000 Promissory Note Loan Documents, by, *inter alia*, (1) Defendant ESS' failure to pay timely certain monthly interest payments due to Second Wave under the $715,000 Promissory Note Loan Documents; (2) Defendant ESS' failure to pay all amounts owed to Second Wave under the $715,000 Promissory Note Loan Documents on maturity (May 12, 2019); (3) Defendant ESS' breach and violation of the affirmative covenant to timely deliver financial statements and other related information requested by Second Wave; (4) the occurrence of the $1,000,000 Loan Defaults under the $1,000,000 Promissory Note Loan Documents; and (5) the occurrence of the Factoring Loan Defaults under the Factoring Agreement Loan Documents.

71.     By committing the $715,000 Loan Borrower Defaults, Defendant ESS, as Borrower, breached its obligations owed to Second Wave under the $715,000 Promissory Note and the $715,000 Promissory Note Loan Documents.

72.     Defendant ESS has failed to cure Defendant ESS' $715,000 Loan Borrower Defaults.

73.     As a direct and proximate result of the Defendant ESS' $715,000 Loan Borrower Defaults and breaches of its obligations owed under the $715,000 Promissory Note and the $715,000 Promissory Note Loan Documents, Second Wave is now entitled to exercise and enforce its contractual rights and remedies in accordance with the $715,000 Promissory Note Loan Documents, including recovering the $715,000 Promissory Note Indebtedness of $963,793.05 owed under the $715,000 Promissory Note Loan Documents as of September 11, 2019 (plus all attorneys' fees and expenses incurred by Second Wave, together with continuing interest, costs, and loan expenses).

WHEREFORE, Plaintiff, Second Wave Acquisition, LLC, demand judgment in its favor and against Defendant, Exceptional Software Strategies, Inc., for $963,793.05, plus all attorneys' fees and expenses incurred by Second Wave, continuing interest, cost and loan expenses, and expenses of collection, and such other relief as this Court may deem just and equitable.

### COUNT II – BREACH OF CONTRACT (Default under the $715,000 Promissory Note Loan Documents Pursuant to the $715,000 Loan Guaranty) (Against Defendant Stasko, as Guarantor)

74.     Plaintiff hereby incorporates paragraphs 1-73 as if the same were fully set forth herein at length.

75.     This is a breach of contract claim against Defendant Stasko on the $715,000 Loan for breach of his obligations, as Guarantor, under the $715,000 Promissory Note Loan Documents pursuant to the $715,000 Loan Guaranty.

76.     Defendant ESS, as Borrower, defaulted under the terms of the $715,000 Promissory Note, by, *inter alia*, (1) Defendant ESS' failure to pay timely certain monthly interest payments due to Second Wave under the $715,000 Promissory Note Loan Documents; (2) Defendant ESS' failure to pay all amounts owed to Second Wave under the $715,000 Promissory Note Loan Documents on maturity (May 12, 2019); (3) Defendant ESS' breach and violation of the affirmative covenant to timely deliver financial statements and other related information requested by Second Wave; (4) the occurrence of the $1,000,000 Loan Defaults under the $1,000,000 Promissory Note Loan Documents; and (5) the occurrence of the Factoring Loan Defaults under the Factoring Agreement Loan Documents.

77.     By committing the $715,000 Loan Borrower Defaults, Defendant ESS, as Borrower, breached its obligations owed to Second Wave under the $715,000 Promissory Note and the $715,000 Promissory Note Loan Documents.

78.     As a result of Defendant ESS' $715,000 Loan Borrower Defaults under the $715,000 Promissory Note, Defendant Stasko, as Guarantor, is in default of his obligations under the $715,000 Promissory Note Loan Documents pursuant to the $715,000 Loan Guaranty for the benefit of Second Wave.

79.     Defendant ESS has failed to cure Defendant ESS' $715,000 Loan Borrower Defaults.

80.     Defendant Stasko has failed to cure Defendant Stasko's $715,000 Loan Guarantor Defaults.

81.     As a direct and proximate result of Defendant Stasko's $715,000 Loan Guarantor Defaults and breaches of his obligations owed under the $715,000 Promissory Note Loan Documents and the $715,000 Loan Guaranty, Second Wave is now entitled to exercise and enforce its contractual rights and remedies in accordance with the $715,000 Loan Guaranty and the other $715,000 Promissory Note Loan Documents, including, but not limited to, recovering the $715,000 Promissory Note Indebtedness of $963,793.05 owed under the $715,000 Promissory Note, the $715,000 Loan Guaranty, and the other $715,000 Promissory Note Loan Documents as of September 11, 2019 (plus all attorneys' fees and expenses incurred by Second Wave, together with continuing interest, costs, and loan expenses).

WHEREFORE, Plaintiff, Second Wave Acquisition, LLC, demand judgment in its favor and against Defendant, Paul J. Stasko, Jr., for $963,793.05, plus all attorneys' fees and expenses incurred by Second Wave, continuing interest, cost and loan expenses, and expenses of collection, and such other relief as this Court may deem just and equitable.

### COUNT III – BREACH OF CONTRACT (Default on the $1,000,000 Loan) (Against Defendant ESS, as Borrower)

82.     Plaintiff hereby incorporates paragraphs 1-81 as if the same were fully set forth herein at length.

83.     This is a breach of contract claim against Defendant ESS on the $1,000,000 Loan for breach of its obligations, as Borrower, under the $1,000,000 Promissory Note and the $1,000,000 Promissory Note Loan Documents.

84.     Defendant ESS, as Borrower, defaulted under the terms of the $1,000,000 Promissory Note and the $1,000,000 Promissory Note Loan Documents, by, *inter alia*, (1) Defendant ESS' failure to pay timely certain monthly interest payments due to Second Wave under the $1,000,000 Promissory Note Loan Documents; (2) Defendant ESS' failure to pay all amounts

owed to Second Wave under the $1,000,000 Promissory Note Loan Documents on maturity (November 16, 2018); (3) Defendant ESS' breach and violation of the affirmative covenant to timely deliver financial statements and other related information requested by Second Wave; (4) the occurrence of the $715,000 Loan Defaults under the $1,000,000 Promissory Note Loan Documents; and (5) the occurrence of the Factoring Loan Defaults under the Factoring Agreement Loan Documents

85.     By committing the $1,000,000 Loan Borrower Defaults, Defendant ESS, as Borrower, breached its obligations owed to Second Wave under the $1,000,000 Promissory Note and the $1,000,000 Promissory Note Loan Documents.

86.     Defendant ESS has failed to cure the Defendant ESS' $1,000,000 Loan Borrower Defaults.

87.     As a direct and proximate result of the Defendant ESS' $1,000,000 Loan Borrower Defaults and breach of its obligations owed under the $1,000,000 Promissory Note and the $1,000,000 Promissory Note Loan Documents, Second Wave is now entitled to exercise and enforce its contractual rights and remedies in accordance with the $1,000,000 Promissory Note Loan Documents, including, but not limited to, recovering the $1,000,000 Promissory Note Indebtedness of $1,439,536.55 owed under the $1,000,000 Promissory Note Loan Documents as of September 11, 2019 (plus all attorneys' fees and expenses incurred by Second Wave, together with continuing interest, costs, and loan expenses).

WHEREFORE, Plaintiff, Second Wave Acquisition, LLC, demand judgment in its favor and against Defendant, Exceptional Software Strategies, Inc., for $1,439,536.55, plus all attorneys' fees and expenses incurred by Second Wave, continuing interest, cost and loan expenses, and expenses of collection, and such other relief as this Court may deem just and equitable.

### COUNT IV – BREACH OF CONTRACT (Default under the $1,000,000 Promissory Note Loan Documents Pursuant to the $1,000,000 Loan Guaranty) (Against Defendant Stasko, as Guarantor)

88.     Plaintiff hereby incorporates paragraphs 1-87 as if the same were fully set forth herein at length.

89.     This is a breach of contract claim against Defendant Stasko on the $1,000,000 Loan for breach of his obligations, as Guarantor, under the $1,000,000 Promissory Note Loan Documents pursuant to the $1,000,000 Loan Guaranty.

90.     Defendant ESS, as Borrower, defaulted under the terms of the $1,000,000 Promissory Note, by, *inter alia*, (1) Defendant ESS' failure to pay timely certain monthly interest payments due to Second Wave under the $1,000,000 Promissory Note Loan Documents; (2) Defendant ESS' failure to pay all amounts owed to Second Wave under the $1,000,000 Promissory Note Loan Documents on maturity (November 16, 2018); (3) Defendant ESS' breach and violation of the affirmative covenant to timely deliver financial statements and other related information requested by Second Wave; (4) the occurrence of the $715,000 Loan Defaults under the $715,000 Promissory Note Loan Documents; and (5) the occurrence of the Factoring Loan Defaults under the Factoring Agreement Loan Documents.

91.     By committing the $1,000,000 Loan Borrower Defaults, Defendant ESS, as Borrower, breached its obligations owed to Second Wave under the $1,000,000 Promissory Note and the $1,000,000 Promissory Note Loan Documents.

92.     As a result of Defendant ESS' $1,000,000 Loan Borrower Defaults under the $1,000,000 Promissory Note, Defendant Stasko, as Guarantor, is in default of his obligations under the $1,000,000 Promissory Note Loan Documents pursuant to the $1,000,000 Loan Guaranty for the benefit of Second Wave.

93.     Defendant ESS has failed to cure Defendant ESS' $1,000,000 Loan Borrower Defaults.

94.     Defendant Stasko has failed to cure Defendant Stasko's $1,000,000 Loan Guarantor Defaults.

95.     As a direct and proximate result of Defendant Stasko's $1,000,000 Loan Guarantor Defaults and breaches of his obligations owed under the $1,000,000 Promissory Note Loan Documents and the $1,000,000 Loan Guaranty, Second Wave is now entitled to exercise and enforce its contractual rights and remedies in accordance with the $1,000,000 Loan Guaranty and the other $1,000,000 Promissory Note Loan Documents, including, but not limited to, recovering the $1,000,000 Promissory Note Indebtedness of $1,439,536.55 owed under the $1,000,000 Promissory Note, the $1,000,000 Loan Guaranty, and the other $1,000,000 Promissory Note Loan Documents as of September 11, 2019 (plus all attorneys' fees and expenses incurred by Second Wave, together with continuing interest, costs, and loan expenses).

WHEREFORE, Plaintiff, Second Wave Acquisition, LLC, demand judgment in its favor and against Defendant, Paul J. Stasko, Jr., for $1,439,536.55, plus all attorneys' fees and expenses incurred by Second Wave, continuing interest, cost and loan expenses, and expenses of collection, and such other relief as this Court may deem just and equitable.

### COUNT V – BREACH OF CONTRACT (Default on the Factoring Loan) (Against Defendant ESS, as Borrower)

96.     Plaintiff hereby incorporates paragraphs 1-95 as if the same were fully set forth herein at length.

97.     This is a breach of contract claim against Defendant ESS on the Factoring Loan for breach of its obligations, as Borrower, under the Factoring Agreement and Factoring Agreement Loan Documents.

98.     Defendant ESS, as Borrower, defaulted under the terms of the Factoring Agreement and the Factoring Agreement Loan Documents, by, *inter alia*, (1) Defendant ESS' failure to pay timely all Obligations due to Second Wave under the Factoring Agreement Loan Documents, including, but not limited to, (a) Factoring Fees, (b) Minimum Monthly Fees, (c) Collection Service Fees, (d) Out-of-pocket Expenses, and (e) Advanced Amounts; (2) Defendant ESS' failure to provide Second Wave access to all premises where Collateral is located for the purposes of inspecting any of the Collateral, including Defendant ESS' books and records; (3) Second Wave's good faith determination that it is insecure with respect to the prospect of repayment or performance of the Obligations under the Factoring Agreement Loan Documents; (4) the occurrence of the $715,000 Loan Defaults under the $715,000 Promissory Note Loan Documents; and (5) the occurrence of the $1,000,000 Loan Defaults under the $1,000,000 Promissory Note Loan Documents.

99.     By committing the Factoring Loan Borrower Defaults, Defendant ESS, as Borrower, breached its obligations owed to Second Wave under the Factoring Agreement and the Factoring Agreement Loan Documents.

100.     Defendant ESS has failed to cure the Defendant ESS' Factoring Loan Borrower Defaults.

101.     As a direct and proximate result of the Defendant ESS' Factoring Loan Borrower Defaults and breach of its obligations owed under the Factoring Agreement and the Factoring Agreement Loan Documents, Second Wave is now entitled to exercise and enforce its contractual rights and remedies in accordance with the Factoring Agreement Loan Documents, including, but not limited to, recovering the Factoring Loan Indebtedness of $3,405,655.02 owed under the

Factoring Agreement Loan Documents as of September 11, 2019 (plus all attorneys' fees and expenses incurred by Second Wave, together with continuing interest, costs, and loan expenses).

WHEREFORE, Plaintiff, Second Wave Acquisition, LLC, demand judgment in its favor and against Defendant, Exceptional Software Strategies, Inc., for $3,405,655.02, plus all attorneys' fees and expenses incurred by Second Wave, continuing interest, cost and loan expenses, and expenses of collection, and such other relief as this Court may deem just and equitable.

### COUNT VI – BREACH OF CONTRACT (Default under the Factoring Agreement Loan Documents Pursuant to the Factoring Loan Guaranty) (Against Defendant Stasko, as Guarantor)

102.    Plaintiff hereby incorporates paragraphs 1-101 as if the same were fully set forth herein at length.

103.    This is a breach of contract claim against Defendant Stasko on the Factoring Loan for breach of his obligations, as Guarantor, under the Factoring Agreement Loan Documents pursuant to the Factoring Loan Guaranty.

104.    Defendant ESS defaulted under the terms of the Factoring Agreement Loan Documents, by, *inter alia*, (1) Defendant ESS' failure to pay timely all Obligations due to Second Wave under the Factoring Agreement Loan Documents, including, but not limited to, (a) Factoring Fees, (b) Minimum Monthly Fees, (c) Collection Service Fees, (d) Out-of-pocket Expenses, and (e) Advanced Amounts; (2) Defendant ESS' failure to provide Second Wave access to all premises where Collateral is located for the purposes of inspecting any of the Collateral, including Defendant ESS' books and records; (3) Second Wave's good faith determination that it is insecure with respect to the prospect of repayment or performance of the Obligations under the Factoring Agreement Loan Documents; (4) the occurrence of the $715,000 Loan Defaults under the

$715,000 Promissory Note Loan Documents; and (5) the occurrence of the $1,000,000 Loan Defaults under the $1,000,000 Promissory Note Loan Documents.

105.    By committing the Factoring Loan Borrower Defaults, Defendant ESS breached its obligations owed to Second Wave under the Factoring Agreement and the Factoring Agreement Loan Documents.

106.    As a result of Defendant ESS' Factoring Loan Borrower Defaults under the Factoring Agreement, Defendant Stasko, as Guarantor, is in default of his obligations under the Factoring Agreement Loan Documents pursuant to the Factoring Loan Guaranty for the benefit of Second Wave.

107.    Defendant ESS has failed to cure Defendant ESS' Factoring Loan Borrower Defaults.

108.    Defendant Stasko has failed to cure Defendant's Factoring Loan Guarantor Defaults.

109.    As a direct and proximate result of Defendant Stasko's Factoring Loan Guarantor Defaults and breaches of his obligations owed under the Factoring Agreement Loan Documents and the Factoring Loan Guaranty, Second Wave is now entitled to exercise and enforce its contractual rights and remedies in accordance with the Factoring Loan Guaranty and the other Factoring Agreement Loan Documents, including, but not limited to, recovering the Factoring Loan Indebtedness of $3,405,655.02 owed under the Factoring Agreement, the Factoring Loan Guaranty, and the other Factoring Agreement Loan Documents as of September 11, 2019 (plus all attorneys' fees and expenses incurred by Second Wave, together with continuing interest, costs, and loan expenses).

WHEREFORE, Plaintiff, Second Wave Acquisition, LLC, demand judgment in its favor and against Defendant, Paul J. Stasko, Jr., for $3,405,655.02 plus all attorneys' fees and expenses incurred by Second Wave, continuing interest, cost and loan expenses, and expenses of collection, and such other relief as this Court may deem just and equitable.

### COUNT VII – BREACH OF CONTRACT (Default on the Service Agreements) (Against Defendant ESS)

110.    Plaintiff hereby incorporates paragraphs 1-109 as if the same were fully set forth herein at length.

111.    This is a breach of contract claim against Defendant ESS for its breach of its obligations, under the Service Agreements.

112.    Defendant ESS breached and defaulted in its performance of its obligations under the terms of the Service Agreements by, *inter alia*, Defendant ESS' failure to pay timely all compensation, fees, expenses and other amounts due under the Service Agreements to Second Wave.

113.    By committing the Service Agreement Defaults, Defendant ESS breached its obligations owed to Second Wave under the Service Agreements.

114.    Defendant ESS has failed to cure the Defendant ESS' Service Agreement Defaults.

115.    As a direct and proximate result of the Defendant ESS' Service Agreement Defaults and breach of its obligations owed under the Service Agreements, Second Wave is now entitled to exercise and enforce its contractual rights and remedies in accordance with the Service Agreements, including, but not limited to, including, but not limited to, recovering the Accounts Receivable of $508,362.00 owed under the Service Agreements as of September 11, 2019.

WHEREFORE, Plaintiff, Second Wave Acquisition, LLC, demand judgment in its favor and against Defendant, Exceptional Software Strategies, Inc., for $508,362.00, and such other relief as this Court may deem just and equitable.

**FOX ROTHSCHILD LLP**

By:           /s/          
Emily Catron (D. Md. #21006)
Nicholas Solosky (D. Md. #18559)
1030 15th Street, N.W.
Suite 380 East
Washington, D.C. 20005
Telephone:  (202) 696-1460
Facsimile:  (202) 461-3102
nsolosky@foxrothschild.com
ecatron@foxrothschild.com
*Attorneys for Second Wave Acquisition, LLC*

Of Counsel;
Eric E. Reed, Esquire
Jason C. Manfrey, Esquire
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
Telephone: (215) 299-2000
Facsimile:  (215) 299-2150
ereed@foxrothschild.com
jmanfrey@foxrothschild.com

**DATED:**  September 30, 2019