IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SECOND WAVE ACQUISITION, LLC
    *Plaintiff*

    v.

EXCEPTIONAL SOFTWARE
STRATEGIES, INC., *et al.*
    *Defendants.*

Civil Action No. ELH-19-02870

**MEMORANDUM OPINION**

Plaintiff Second Wave Acquisition, LLC ("Second Wave") filed a breach of contract action against defendants Exceptional Software Strategies, Inc. ("ESS") and Paul J. Stasko, Jr. ECF 1 (the "Complaint"). Between May and November 2017, ESS, as the borrower, and Stasko, as the guarantor, allegedly entered into a series of loan and service agreements with the "Taveekan Entities," which include, *inter alia*, various money funds and financial services companies. *Id.* ¶ 1; ECF 32, ¶ 11.[1] In October 2018, Second Wave acquired the Taveekan Entities' rights under the agreements between the Taveekan Entities and ESS. ECF 1, ¶ 1 n.2. In the Complaint, Second Wave alleges that ESS and Stasko defaulted on their obligations under the relevant agreements and owe Second Wave more than $6 million. *See id.* at 2-3.

Defendants moved to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction. ECF 3. By Order of March 18, 2020 (ECF 19), I denied the motion to dismiss, concluding that the parties are diverse for purposes of 28 U.S.C. § 1332. Thereafter,

---

[1] These entities include Taveekan Capital Finance Fund I, LP ("Taveekan Fund I"); Taveekan Capital Finance Fund II, LP ("Taveekan Fund II"); Taveekan Capital Finance Fund GP I, LP ("Taveekan Fund GP"); Taveekan Finance, LLC ("Taveekan Finance"); Taveekan Management, LLC ("Taveekan Management"); and Rocket 22, LLC ("Rocket 22").

defendants answered the Complaint and filed a counterclaim, which they subsequently amended. ECF 24 ("Counterclaim"); ECF 32 ("Amended Counterclaim").

The Amended Counterclaim contains eleven counts, premised on Second Wave's status as "successor-in-interest" to the Taveekan Entities. ESS and Stasko, as counter-plaintiffs, assert that "most of the documents that Second Wave seeks to enforce are not valid or enforceable because they were never authorized or approved" by ESS or Stasko. ECF 32, ¶ 1. According to the counter-plaintiffs, Stasko's electronic signature was "fraudulently inserted" by James Hoover, "Taveekan's principal," without the knowledge or consent of Stasko. *Id.*

In Counts I through VI of the Amended Counterclaim, counter-plaintiffs seek declaratory relief, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*, regarding the validity and enforceability of the agreements between ESS and the Taveekan Entities. They also assert claims for breach of contract (Counts VII through IX); breach of fiduciary duty (Count X); and conversion (Count XI).

Second Wave has moved to dismiss Count X and Count XI of the Amended Counterclaim, pursuant to Fed. R. Civ. P. 12(b)(6). ECF 33. The motion is supported by a memorandum of law (ECF 33-1) (collectively, the "Motion") and two exhibits. ECF 33-2; ECF 33-3. Among other things, Second Wave moves to dismiss the claims on the ground that there is no basis for the imposition of liability on Second Wave for the debts and liabilities of the Taveekan Entities. Counter-plaintiffs, who are the defendants in the suit, oppose the Motion (ECF 37, "Opposition") and provide one exhibit. ECF 37-1. In their Opposition, counter-plaintiffs contend that if the Court grants the Motion, they should be granted leave to amend the counterclaim. ECF 37 at 3 n.3. Second Wave has replied. ECF 38.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion.

## I. Factual Background[2]

ESS is a Maryland based company that "provides information technology services to various government agencies and departments, many of whom [sic] are in the intelligence field." ECF 32, ¶ 10. Mr. Stasko is the co-founder and president of ESS. *Id.*

Second Wave is a Delaware limited liability company, the sole member of which is Second Wave Capital Management, LLC. *Id.* ¶ 6. In the Amended Counterclaim, defendants refer to "Taveekan" as a Virginia based "financial services and advisory firm" that "operates through multiple entities with common ownership and management." *Id.* ¶ 11. The entities are the Taveekan Fund I, Taveekan Fund II, Taveekan Fund GP, Taveekan Finance, Taveekan Management, and Rocket 22, identified collectively as the "Taveekan Entities." *Id.*

James Hoover was the "owner and principal manager of Taveekan Entities" at the relevant time. ECF 32, ¶ 12. Hoover also acted as the interim Chief Financial Officer ("CFO") of ESS from May 2017 until February 2018. *Id.* ¶¶ 14, 16.

As discussed, *infra*, Second Wave acquired the assets of some of the Taveekan Entities on October 17, 2018. *Id.* ¶ 39. According to defendants, this makes Second Wave the "successor-in-interest" to the Taveekan Entities. *Id.* ¶¶ 83, 93, 102, 109.

Between May 2017 and November 2017, before Second Wave acquired any rights to the Taveekan Entities, ESS allegedly entered into a series of loan and service agreements with various Taveekan Entities. *Id.* ¶ 18; *see* ECF 1-1; ECF 1-2; ECF 1-3; ECF 1-4; ECF 1-5; ECF 1-6; ECF

---

[2] The factual background is drawn primarily from the Amended Counterclaim as well as exhibits to the Complaint.

1-7; ECF 1-8; ECF 1-9; ECF 1-10; ECF 1-11; ECF 1-12. Through these agreements, ESS allegedly acted as a borrower on loans in the amount of $715,000 (ECF 1-1) and $1,000,000 (ECF 1-5), as well as a "factoring loan." ECF 1-8. According to Second Wave, as of September 11, 2019, ESS's obligations under those loans totaled $5,808,983.62. ECF 1, ¶ 6. And, as of the same date, ESS allegedly owed Second Wave $508,362.00 under the relevant service agreements. *Id.* ¶ 8.

Defendants allege that Hoover, acting in his role as interim CFO of ESS, fraudulently inserted Stasko's signature on most of these agreements, even though neither ESS nor Stasko ever authorized or approved the agreements. *Id.* ¶¶ 16, 19. Therefore, according to defendants, "these instruments are invalid and unenforceable." *Id.* ¶ 19. Further, defendants contend that, even if the agreements are valid, Hoover and the Taveekan Entities breached them. *Id.* ¶¶ 20-26. And, in doing so, the Taveekan Entities, through Hoover, "buried ESS in unsustainable debt," *id.* ¶¶ 27-32, and diverted funds from ESS's bank accounts for the benefit of himself and the Taveekan Entities. *Id.* ¶¶ 33-35.

Of relevance here, the Amended Counterclaim alleges that Second Wave, "as alleged successor-in-interest" to the Taveekan Entities, "acted as an agent of ESS" and owed "a fiduciary duty of loyalty and care to ESS." *Id.* ¶ 109. Second Wave allegedly breached that duty, as follows, *id.* ¶ 110:

> (a) failing as ESS's agent to secure reasonable sources of capital for ESS, not as a matter of strategy but due to self-interest and self-dealing by Second Wave; (b) entering into unauthorized transactions, including through the fraudulent use of Mr. Stasko's digital signature; (c) diverting the funds of its principal for its own use, or for the benefit of its related enterprises; (d) concealing, for a time, the fact that in addition to owning companies under the "Taveekan" name, Mr. Hoover owned Rocket 22, a clear conflict of interest; (e) concealing Mr. Hoover's $270,000 federal tax lien, which barred him from holding a position of control with ESS and placed ESS's government contracts with DSS, and by extension the entire business, in peril; (f) jeopardizing the financial health of ESS in numerous ways, and in particular by incurring substantial debt without any plan for repayment; (g) charging unauthorized expenses to the company, and then removing the funds for

4

reimbursement from the company's bank accounts without approval; and (h) causing liens to be recorded on assets over which Sandy Spring Bank had a first priority interest, which jeopardized the relationship with the bank.

Moreover, ESS provided Second Wave, "as alleged successor-in-interest," with access to ESS's deposit accounts "in reasonable reliance that its funds would be used for business purposes and solely for the benefit of ESS." *Id.* ¶ 115. However, according to defendants, Second Wave "intentionally deprived ESS of the use of its funds by diverting" ESS's funds to Second Wave's "personal or other business accounts as 'prepayments' for various professional services, despite the fact that those services were never provided." *Id.* ¶ 116.

According to defendants, by February 2018, ESS discovered that Hoover "had abused his authority at ESS and breached his duty to ESS by engaging in…fraudulent and wrongful actions, by which he placed the interests of himself and the Taveekan Entities ahead of the interests of ESS." *Id.* ¶ 36. Thus, on April 23, 2018, ESS terminated its business relationship with the Taveekan Entities through a "formal notice" sent by its attorney to the Taveekan Entities. *Id.* ¶ 37; *see* ECF 32-1. The notice stated that all agreements between ESS and the Taveekan Entities were "void *ab initio* and of no force and effect." ECF 32-1 at 2.

Thereafter, on October 17, 2018, Second Wave "asserted acquisition" of the agreements between ESS and the Taveekan Entities through "a series of assignment documents." *Id.* ¶ 39; *see* ECF 1-13 (collectively, "Assignment Documents"). On July 23, 2019, Second Wave gave notice to ESS that ESS had defaulted on the agreements that Second Wave had acquired from the Taveekan Entities. ECF 1, ¶ 53. And, on October 1, 2019, Second Wave commenced this suit against ESS and Stasko, to collect on its alleged interest under those agreements. *See* ECF 1.

## II. Standards of Review

### A. Rule 12(b)(6)

Plaintiff, in its position as counter-defendant, has moved to dismiss two counts of the Amended Counterclaim, pursuant to Fed. R. Civ. P. 12(b)(6). ECF 33. A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy

Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440 (citations omitted); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual

7

allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quoting *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (quoting *Forst,* 4 F.3d at 250) (emphasis added in *Goodman*).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger*, 510 F.3d at 450.

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for

8

summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). Notably, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, __ U.S. __, 138 S. Ct. 558 (2017); *Oberg*, 745 F.3d at 136; *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one

"that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

In support of its Motion, Second Wave submits two asset purchase agreements executed by Second Wave and Taveekan Entities. ECF 33-2; ECF 33-3 (collectively, the "Asset Purchase Agreements"). Counter-plaintiffs assert that the Court may not consider the Asset Purchase Agreements because they are not attached to or integral to the Amended Counterclaim or the Complaint. ECF 37 at 9. Further, counter-plaintiffs challenge the authenticity of the two agreements because they are "unsworn and incomplete." *Id.* According to counter-plaintiffs, the version of the two agreements that Second Wave submitted as exhibits contain redactions and only include certain "cherry-picked" parts of the agreements. *Id.* at 9-10.

In response, Second Wave maintains that the Court should consider the Asset Purchase Agreements because they are integral to counter-plaintiffs' claims; the agreements, which memorialize Second Wave's acquisition of Taveekan Entities' assets, are "the entire basis for Defendants' claims of successor liability." ECF 38 at 2. Further, Second Wave asserts that the redactions in the documents do not render them inauthentic. *Id.*

As noted, "a court may consider [a document submitted by a movant] in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the [nonmoving parties] do not challenge its authenticity*." Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *see also Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998). Because counter-plaintiffs challenge the authenticity of the Asset Purchase Agreements, the Court may not consider Second Wave's exhibits (ECF 33-2; ECF 33-3) at this juncture.

### B. Choice of Law

The parties assert that the agreements in this case call for the application of both Maryland and Virginia law. ECF 33-1 at 8 n.2; ECF 37 at 8 n.8.  Counter-plaintiffs also contend that Delaware law may apply because some of the Taveekan Entities are believed to have been formed under the laws of the State of Delaware. ECF 37 at 8 n.8. But, they do not allege that the law in Delaware is substantially different from the law in Virginia or Maryland. *Id.*  Both sides also agree that the relevant law in the various jurisdictions is substantially similar on the points at issue, such that the Court need resolve choice of law issues in resolving the Motion. ECF 33-1 at 8 n.2; ECF 37 at 8 n.8.

A federal court sitting in diversity must apply the law of the state in which the court is located, including the forum state's choice-of-law rules, unless a compelling federal interest directs

otherwise. *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011). Maryland is, of course, the forum state.

Counts X and XI of the Amended Counterclaim, which are challenged in the Motion, assert tort claims. Under Maryland's choice-of-law principles for tort claims, Maryland applies the doctrine of *lex loci delecti*, *i.e.*, the law of the jurisdiction where the alleged wrong occurred. *Lewis v. Waletzky*, 422 Md. 647, 657, 31 A.3d 123, 129 (2011); *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 620, 925 A.2d 636, 648 (2007); *Kortobi v. Kass*, 182 Md. App. 424, 443, 957 A.2d 1128, 1139 (2008), *aff'd*, 410 Md. 168, 978 A.2d 247 (2009).

As indicated, the relevant agreements in this case call for the application of both Maryland and Virginia law. Further, ESS is based in Maryland, the Taveekan Entities are based in Virginia, and Second Wave is based in Delaware. But, the parties do not indicate where the alleged wrongs may have occurred.

Nonetheless, as both sides assert, I need not resolve the choice-of-law issue at this juncture. In a case where the parties have not identified any state law conflicts, the court need not undertake a choice-of-law analysis. *See Cleaning Authority, Inc. v. Neubert*, 739 F. Supp. 2d 807, 820 (D. Md. 2010) ("'Choice-of-law analysis becomes necessary . . . only if the relevant laws of the different states lead to different outcomes.'" (citation omitted)); *Ohio Sav. Bank v. Progressive Cas. Ins. Co.*, 521 F.3d 960, 962 (8th Cir. 2008) ("Like the district court, we will ignore what might be a complex choice of law analysis because the parties have not identified a relevant state law conflict.").

For present purposes, it is sufficient that the laws concerning successor liability are virtually identical in Maryland and Virginia. Accordingly, I shall apply the substantive law of these states.

**III.    Discussion**

In the Amended Counterclaim, counter-plaintiffs allege a claim of breach of fiduciary duty (Count X), ECF 32, ¶¶ 108-113, and a common law claim of conversion (Count XI). *Id.* ¶¶ 114-120. Both of these claims are based on the presumption that Second Wave has successor liability for the actions of the Taveekan Entities. ECF 37 at 14, 15 n.14.

Second Wave, as counter-defendant, has moved to dismiss both counts on the ground that there is no basis for the imposition of successor liability. ECF 33-1 at 8-9. Further, even if there is successor liability, it maintains that Count X is subject to dismissal because the breach of fiduciary duty claim is duplicative of the breach of contract claims. *Id.* And, Second Wave urges dismissal of Count XI. In its view, the conversion claim should be construed as a quantum meruit claim, and such a claim is improper in a case governed by contract. *Id.* at 11-13. In addition, Second Wave argues that the conversion claim is not sustainable under Maryland law because counter-plaintiffs "allege a commingling of the funds." ECF 38 at 5.

1. Successor Liability

As noted, counter-plaintiffs' claims under Count X and Count XI are contingent on whether Second Wave assumed the Taveekan Entities' liabilities when Second Wave acquired the Taveekan Entities' assets. Therefore, I must start by considering Second Wave's potential liability as successor to the Taveekan Entities.

Ordinarily, a corporation that merely purchases the assets of another corporation will not be liable for the debts or other liabilities of that corporation. *See Kaiser Found. Health Plan of Mid-Atl. States v. Clary & Moore, P.C.*, 123 F.3d 201, 204 (4th Cir. 1997) (Virginia law); *Balt. Luggage Co. v. Holtzman*, 80 Md. App. 282, 290, 62 A.2d 1286, 1289-90 (1989); 15 WILLIAM MEADE FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 7124 (rev. ed. 2008).

13

Under Maryland and Virginia law, a successor will only be liable for the debts of its predecessor if it fits into one of four exceptions to the rule against successor liability. In *Baltimore Luggage Co.*, 80 Md. App. at 290, 562 A.2d at 1289-90, the Maryland Court of Special Appeals said:

> The debts and liabilities of the predecessor corporation are imposed on the successor corporation when (1) there is an expressed or implied assumption of liability; (2) the transaction amounts to a consolidation or merger; (3) the purchasing corporation is a mere continuation of the selling corporation; or (4) the transaction is entered into fraudulently to escape liability for debts.

*See Royal All. Assocs., Inc. v. Branch Ave. Plaza, L.P.*, 587 F. Supp. 2d 729, 738 (E.D. Va. 2008); *Smith v. Navistar Int'l Transp. Corp.*, 737 F. Supp. 1446, 1448 (D. Md. 1988); *Elmer v. Tenneco Resins, Inc.*, 698 F. Supp. 535, 540 (D. Del. 1988).

Counter-plaintiffs contend that the first exception applies in this case—Second Wave impliedly assumed the liabilities of the Taveekan Entities. ECF 37 at 9-11. Further, counter-plaintiffs argue that discovery may reveal that other exceptions apply. Thus, they insist that the viability of their successor liability claim cannot be resolved at this juncture. *Id.* at 11.

In the Motion, Second Wave maintains that the Amended Counterclaim does not allege any facts indicating that an exception to the successor liability rule may apply. ECF 33-1 at 10. Thus, it argues that Second Wave cannot be held liable under either count. *Id.* at 9.

I agree with Second Wave. In the Amended Counterclaim, counter-plaintiffs allege that Second Wave acquired the assets of the Taveekan Entities, but they do not make any other relevant allegations, either as to the transactions between Second Wave and the Taveekan Entities or Second Wave and ESS, so as to support a basis for Second Wave's liability.

In their Opposition, counter-plaintiffs point to paragraphs 83, 93, 102, and 109 of the Amended Counterclaim as alleging that Second Wave's liability "stems from its relationship as successor-in-interest to the Taveekan Entities." ECF 36 at 3 n.3. Indeed, each of the referenced

paragraphs states that Second Wave is the "purported successor-in-interest to" the relevant Taveekan Entity. ECF 32, ¶¶ 83, 93, 102, 109. However, these paragraphs only include allegations as to actions taken by the Taveekan Entities prior to Second Wave's acquisition. And, paragraphs 89, 93, and 102 reference agreements that were executed between the Taveekan Entities and ESS. *See* ECF 1-10; ECF 1-11; ECF 1-12. But, the agreements do not include any references to Second Wave.

Moreover, the remainder of the Amended Counterclaim is similarly focused on the actions taken by Hoover and the Taveekan Entities prior to Second Wave's asset purchase. In fact, the Amended Counterclaim is silent as to any actions taken by Second Wave after its acquisition in October 2018.

Counter-plaintiffs contend that Second Wave impliedly assumed the liabilities of the Taveekan Entities. ECF 37 at 9-11. Indeed, as counter-plaintiffs note, successor liability may be based on an implied assumption where the party asserting liability relied upon conduct or representations of the successor corporation which indicated its intention to pay the debts of the seller. *Baltimore Luggage Co.*, 80 Md. App. at 295, 562 A.2d at 1292. But, counter-plaintiffs do not allude to any interactions between ESS and Second Wave in which Second Wave may have indicated such an intention. In fact, counter-plaintiffs do not allege that there was ever any interaction at all between the two companies.

Accordingly, I conclude that the allegations in the Amended Counterclaim are not sufficient to support a claim against Second Wave for successor liability as to the debts and liabilities of the Taveekan Entities. *See Odjaghian v. EngagePoint, Inc*., JKB-18-0151, 2018 WL 3329617, at *6 (D. Md. July 6, 2018) (granting motion to dismiss where "the Court finds that Plaintiffs have not plausibly alleged that [alleged successor corporation] is liable for the debts of

[alleged predecessor corporation] under any theory of corporate successor liability"); *TBC, Inc. v. DEI Holdings, Inc.*, CCB-14-3644, 2015 WL 1396120, at *4 (D. Md. Mar. 24, 2015) (granting motion to dismiss where the plaintiff "has not alleged facts necessary to make its claim of successor liability plausible"). Thus, I need not consider the remaining contentions as to Counts X and XI.

### IV.   Conclusion

For the foregoing reasons, I shall grant the Motion, without prejudice.

An Order follows, consistent with this Memorandum Opinion.

Date: February 17, 2021                                       /s/
                                                    Ellen L. Hollander
                                                    United States District Judge